## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LORENA DIAZ DE LEON,

      Plaintiff,

      vs.                                 Civ. No. 03-525  MV/ACT

NEW MEXICO RETIREE HEALTH CARE
AUTHORITY, MILTON SANCHEZ,
CHRISTINE TESSMANN, and LOUIS ABEYTA,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed January 20, 2004, **[Doc. No. 16].**   The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.

### FACTUAL BACKGROUND

On July 7, 2001, Plaintiff Lorena Diaz de Leon began a one-year probationary period as the Information System Manager for Defendant New Mexico Retiree Health Care Authority ("NMRHCA"), a state agency charged with providing comprehensive group health insurance programs under the New Mexico Retiree Heath Care Act.  Plaintiff replaced Defendant Louis Abeyta, who became Director of Operations.  As Director of Operations, Abeyta supervised Plaintiff.

Beginning in August 2001, Abeyta sent a number of emails to Plaintiff suggesting that he was disappointed with her performance on projects she had been assigned.  On September 28,

2001, Abeyta wrote a memorandum to Plaintiff specifically outlining the deficiencies in her work performance. Soon after, Defendant Milton Sanchez, the Executive Director of NMRHCA, met with Plaintiff to discuss Abeyta's assessment of her performance.

On November 1, 2001, Sanchez terminated Plaintiff effective November 9, 2001. Later that day, Sanchez called Plaintiff and told her that he had decided to retain her and that she would swap positions with Abeyta.

Plaintiff's employment with NMRHCA continued, and, on February 19, 2002, Plaintiff reported to Christine Tessmann, Deputy Director of NMRHCA, that Abeyta had been sexually harassing her. Plaintiff reported that Abeyta had told her stories about his personal life, including details about his sexual encounters. Plaintiff also told Tessmann that when she told Abeyta that the stories were unwelcome, he stopped and that he had not engaged in sexual-related behavior since September 2001. Plaintiff asked Tessmann to keep the information confidential and said that she did not want any action taken against Abeyta. Plaintiff later clarified in an email to Tessmann that she would rather treat it as though she had said nothing at all and that she would contact Tessmann if she wanted to make a formal complaint.

In addition to the conduct Plaintiff reported to Tessmann, Plaintiff has testified that Abeyta engaged in the following incidents of sexual-related comments or conduct: 1) asking her what she did the previous weekend and with whom she went out; 2) suggesting on several occasions that they go to a topless bar; 3) showing her pictures of his friends in the nude; and 4) asking about her sexual preferences and habits.

On March 15, 2002, Sanchez informed Plaintiff of the "decision to uphold our previous dismissal of you." Sanchez asserted that the decision was a result of the State Personnel Office

2

analyzing the IT Manager position she occupied.  Sanchez stated that Plaintiff was not performing the duties and bearing the responsibilities of the IT Manager so she could not be retained in the position.  Plaintiff was terminated and this action followed.

## LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the nonmoving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Pittsburg & Midway Coal Min. Co. v. Yazzie,* 909 F.2d 1387, 1427 (10th Cir. 1990), the burden on the moving party

3

may be discharged by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case, *Celotex,* 477 U.S. at 325.  In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex,* 477 U.S. at 322.

**DISCUSSION**

**I.**     **Jurisdiction Over Plaintiff's Claims**

Defendants' Motion for Summary Judgment challenges the jurisdictional bases of Plaintiff's claims.  Plaintiff asserts in her complaint that she is bringing claims under the New Mexico Human Rights Act; the First and Fourteenth Amendments of the United States Constitution, as protected under 42 U.S.C. §§ 1983, 1985(3), and 1988; the Civil Rights Act of 1964; and Article II, Sections 17 and 18 of the New Mexico Constitution.  Plaintiff specifically alleges two counts:  Count I is entitled "Retaliation for Exercise of Freedom of Speech" and Count II is entitled "Sexual Harassment and Disparate Treatment."

**A.**     New Mexico Human Rights Act

It is undisputed that Plaintiff has failed to follow the procedures for pursuing a violation of the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-1, *et seq*. (1978), in court.  The New Mexico Human Rights Act provides for judicial review through an appeal of an order of nondetermination from the New Mexico Human Rights Commission.  N.M. Stat. Ann. § 28-1-10(D) (1978).  Such an appeal must be commenced "by filing a notice of appeal within thirty days from the date of service of the commission's order."  *Id*. at § 28-1-13(A).  The order of nondetermination of Plaintiff's allegations under the New Mexico Human Rights Act was served

4

on February 19, 2003.  Plaintiff commenced this action forty days later on March 31, 2003.

Plaintiff's counsel's only explanation for the late filing is a reference to a letter from another lawyer Plaintiff had contacted about representing her.  That lawyer stated in his letter offering representation that based on the date of the EEOC's dismissal, which Plaintiff had faxed to his office, her complaint must be filed on March 31, 2003.  Plaintiff's current counsel apparently relied on this letter as describing the date by which all of Plaintiff's claims, including an appeal of the New Mexico Human Rights Act appeal, must be filed.  That reliance was obviously misplaced.  Plaintiff's New Mexico Human Rights Act appeal is untimely.

In addition, Plaintiff only named the NMRHCA as a respondent in her complaint to the New Mexico Human Rights Commission under the New Mexico Human Rights Act.  Accordingly, Plaintiff has failed to exhaust her administrative procedures for claims against the individual defendants, which is a prerequisite to appealing an order of nondetermination under the New Mexico Human Rights Act.

      B.     <u>Federal Constitutional Claims</u>

          1.     42 U.S.C. § 1983

Plaintiff alleges a violation of her rights under the First and Fourteenth Amendments of the United States Constitution.  Plaintiff properly brings those claims under 42 U.S.C. § 1983; however, in addition to the three individual defendants, she also appears to bring such claims against the NMRHCA, which is a state agency.

As a general matter, the Eleventh Amendment bars suits in federal court against a state or an "arm" of the state for money damages.  *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  However, Congress may abrogate a state's Eleventh Amendment immunity.  *Thompson*

5

*v. Colorado*, 278 F.3d 1020, 1025 (10th Cir. 2001) (*citing Seminole Tribe v. Florida*, 517 U.S. 44, 55 (1996)), and a state may waive its Eleventh Amendment immunity.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997)).  Neither has occurred here.  The United States Supreme Court has held that Congress did not abrogate states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983, *Quern v. Jordan*, 440 U.S. 332, 345 (1979), and there is no indication that the state of New Mexico has waived its Eleventh Amendment immunity in this case.

Plaintiff, apparently recognizing that the NMRHCA has immunity, explicitly states that she only seeks injunctive relief from NMRHCA.  The Supreme Court has found federal jurisdiction in suits against state officials seeking prospective injunctive relief—the so-called *Ex Parte Young* doctrine.  *See, e.g.*, *Seminole Tribe*, 517 U.S. 44; *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). The most fundamental pleading requirement for invocation of the *Ex parte Young* doctrine is that the claim be made against state officials in their official capacities and be for prospective relief. *See, e.g.*, *Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001) (citing *Elephant Butte Irr. Dist. v. Department of the Interior*, 160 F.3d 602, 607-09 (10th Cir. 1998) and *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1188-89 (10th 1998)).

Plaintiff's allegations fail to satisfy this basic requirement of the *Ex parte Young* doctrine. Plaintiff has brought claims for injunctive relief only against the state agency and has brought claims against the state officials only in their individual capacities, and only for money damages. There is no claim against a state official in his or her official capacity for prospective injunctive relief.  Accordingly, the only properly pleaded claims under 42 U.S.C. § 1983 are against the three individual defendants in their individual capacities.

2.      42 U.S.C. § 1985(3)

Plaintiff brings a claim, apparently against the three individual defendants in their individual capacities, under 42 U.S.C. § 1985(3).  Section 1985(3) generally prohibits conspiracies to deprive a person of his or her civil rights.[1]  Plaintiff has presented the barest allegations in support of her conspiracy claim.  *See Merritt v. Hawk*, 153 F.Supp.2d 1216, 1225 (D.Colo. 2001) (confirming that "conclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions" are insufficient to state claim under § 1985).  Defendants, however, have not directly challenged the evidence Plaintiff has adduced in support of her § 1985 claim.  Nonetheless, to succeed on a claim under 42 U.S.C. § 1985, a plaintiff must show some deprivation of a federally protected right.  *See*, *e.g.*, *Mitchell v. City of Moore*, 218 F.3d 1190, 1198 (10th Cir. 2000).  Accordingly, Plaintiff's § 1985 claim will rise or fall with the success or failure of her claims that her federally-protected rights were violated.

---

[1] The statute states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

3.      42 U.S.C. § 1988

Plaintiff cannot bring a claim under 42 U.S.C. § 1988, which "does not create independent causes of action, [but instead] simply 'defines procedures under which remedies may be sought in civil rights actions.'" *Hidahl v. Gilpin County Dept. of Social Services*, 938 F.2d 1150, 1152 (10th Cir. 1991) quoting *Schroder v. Volcker*, 864 F.2d 97, 99 (10th Cir. 1988).

C.      Civil Rights Act of 1964

Plaintiff brings her claims under the Civil Rights Act of 1964, presumably under Title VII of the Act, 42 U.S.C. § 2000e, *et seq*., against all Defendants.  The Tenth Circuit, however, has made clear that recovery under Title VII is permitted only against employers.  *See, e.g.*, *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) ("The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act.") (emphasis in original).  It is undisputed that only Defendant NMRHCA is properly considered Plaintiff's employer.

Plaintiff avoids any Eleventh Amendment immunity bar to her claim against NMRHCA under Title VII because the Supreme Court held that Congress, by amending Title VII in 1972 to include state and local governments as "employers," expressed a clear intention to abrogate the states' Eleventh Amendment immunity.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 449 n. 2 (1976); *see also Crumpacker v. Kansas Dept. of Human Resources*, 338 F.3d 1163, 1170 (10th Cir. 2003) (noting that Congress properly abrogated state's Eleventh Amendment immunity to gender-based claims under Title VII).  Accordingly, Plaintiff's Title VII claim for injunctive relief may proceed against the NMRHCA.

D.      New Mexico Constitution

8

Defendants have raised no specific jurisdictional challenges to Plaintiff's claims under the New Mexico Constitution.  Plaintiff brings claims under the freedom of speech provision[2] and the due process, equal protection, and sex discrimination provision of the New Mexico Constitution Bill of Rights.[3]

In sum, the Court finds that it has jurisdiction to consider the merits of 1) Plaintiff's claims under 42 U.S.C. § 1983 against the individual defendants in their individual capacities; 2) Plaintiff's claims under 42 U.S.C. § 1985(3) against the individual defendants in their individual capacities; 3) Plaintiff's claims under Title VII of the Civil Rights Act of 1964 against the NMHRCA; 4) Plaintiff's claims under the New Mexico Constitution against all defendants.

## II.   __Plaintiff's First Amendment Retaliation Claim__

Plaintiff alleges that she was terminated in retaliation for her First Amendment protected activity of reporting Abeyta's sexually harassing behavior.[4]  Generally, "[a]ny form of official retaliation for exercising one's freedom of speech … constitutes an infringement of that freedom."  *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

When assessing a First Amendment retaliation claim against an employer, the Tenth

---

[2]  This provision of the New Mexico Constitution's Bill of Rights states:  "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted."
NM CONST Art. 2, §17

[3]  This provision of the New Mexico Constitution's Bill of Rights states "No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws. Equality of rights under law shall not be denied on account of the sex of any person."
NM CONST Art. 2, § 18

[4]  While the conduct described in Plaintiff's Complaint may very well state a claim of retaliation under Title VII, Plaintiff clearly indicates that her retaliation claim is based on her First Amendment protected activity. Accordingly, the Court will only assess the claim as First Amendment retaliation.

9

Circuit applies a four-part test derived from *Pickering v. Board of Education*, 391 U.S. 563 (1968).  *See Lybrook v. Farmington Mun. Sch.*, 232 F.3d 1334, 1338 (10th Cir. 2000).  Under that test, the court must first determine whether the employee has engaged in speech that involves a matter of public concern.  *See, e.g.*, *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998).  Second, if the employee has engaged in such speech, the court then balances the employee's interest in commenting upon those matters of public concern against the state's interest, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Id.*  Third, if the balance "tips in favor of the employee, the employee must then show that the speech was a substantial or motivating factor in the detrimental employment decision."  *Id.* at 1201-02.  Fourth, if the plaintiff establishes that speech was such a substantial or motivating factor, the employer is given the opportunity to demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.  *Id.* at 1202.

To be protected as speech on a matter of public concern, speech must do more than "merely relate generally to a matter of public interest but must be sufficiently informative to be helpful to the public in evaluating the conduct of government."  *Moore v. City of Wynnewood*, 57 F.3d 924, 932 (10th Cir. 1995); *Wilson v. City of Littleton, Colo.*, 732 F.2d 765, 768 (10th Cir. 1984).  Accordingly, the speech must be more than simply on a topic that might generally interest the public.  Instead, the statements on the topic must themselves be of public concern.  *Koch v. City of Hutchinson*, 847 F.2d 1436, 1445 (10th Cir. 1988).

The Tenth Circuit has generally found that an employee's complaint to an employer regarding sexual harassment against that employee is not speech on a matter of public concern.  *See, e.g.*, *David v. City and County of Denver*, 101 F.3d 1344, 1356 (10th Cir. 1996) (police

officer's administrative complaints and letter to city attorney alleging sexual harassment by fellow officers did not address matters of public concern); *Woodward v. City of Worland*, 977 F.2d 1392, 1403 (10th Cir. 1992) (employees of county sheriff's department alleged that their supervisors and co-employees had retaliated against them after they filed formal sexual harassment complaints against a police officer addressed personal matters, not matters of public concern); *McCall v. Board of Com'rs of County of Shawnee, KS*,  291 F.Supp.2d 1216, 1227-28 (D.Kan. 2003) (finding that employee's allegations regarding harassment against her and absent allegations regarding harassment involving other did not involve matter of public concern).

When examining whether speech involves a matter of public concern, the place of the speech is not determinative.  S*ee Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 415-16 (1979) (holding First Amendment protection applies when a public employee arranges to communicate privately with employer rather than express his view publicly).  Courts do, however, focus on the motive of the speaker.  *See Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994) ("The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances or to address a broader public purpose."); *Starrett v. Wadley*, 876 F.2d 808 (10th Cir. 1989) (female county employee's complaints about male supervisor's alcohol problems were matters of public concern where she testified that her motive in speaking out about supervisor's drinking problems was not purely personal but stemmed from her concerns as member of community).

Here, Plaintiff's motive in reporting Abeyta's harassing conduct is not entirely clear; however, it is undisputed that she was not raising the issue of sexual harassment out of a concern for the public.  She explicitly asked that no actions be taken against Abeyta because the

harassment of her had ended.  In addition, she asked that her complaints be kept entirely

confidential and be reported no further than the Deputy Director she told.  Plaintiff stated that she

would only make a formal complaint if something happened in the future.  Nothing in Plaintiff's

actions or statements indicates an attempt to raise a matter of public concern; instead she was

simply reporting harassment against her.  As a result, under the applicable Tenth Circuit case law,

Plaintiff's statements were "personal matters," not "matters of public concern."

Plaintiff, therefore, has failed to show that she engaged in First Amendment protected

activity.  Accordingly, her First Amendment retaliation claim, brought under 42 U.S.C. § 1983

and her free speech retaliation claim brought the New Mexico Constitution[5] must fail.

**III.**   **Plaintiff's Gender Discrimination Claims**

Plaintiff's second count alleges that Plaintiff suffered disparate treatment on the basis of

gender in work assignments and was subjected to a hostile work environment.[6]

**A.**   Disparate Treatment in Work Assignments

Generally, discrimination claims under Title VII that are supported by indirect evidence of

---

[5]  The parties do not address Plaintiff's claims of retaliatory discharge under the New Mexico
Constitution.  Generally, state courts may find greater protections under state constitutions than under the federal
constitution, even when the language is identical.  *City of Farmington v. Fawcett*, 114 N.M. 537, 544 (N.M. Ct.
App. 1992).  However, under the "interstitial approach" to state constitutional interpretation, adopted by New
Mexico courts, a court "may diverge from federal precedent for three reasons:  a flawed federal analysis, structural
differences between state and federal government, or distinctive state characteristics."  *State v. Gomez,*
122 N.M. 777, 783 (1997).  Plaintiff has presented, and this Court's own review of relevant precedent has
uncovered, no basis to diverge from federal precedent regarding First Amendment retaliation claims when
considering Plaintiff's Free Speech retaliation claim under the New Mexico Constitution.  Accordingly, the Court
finds that Plaintiff's failure to present sufficient evidence to support a finding that she engaged in protected speech
similarly dooms her free speech claim under the New Mexico Constitution.

[6]  Defendants assume in their motion that Plaintiff's disparate treatment claims relate to her termination.
Plaintiff's Complaint indicates, however, that her disparate treatment claim is limited to work assignments.
Plaintiff does not allege that her termination was directly related to her gender.  Instead, her allegations regarding
her termination are limited to the assertion that her termination was retaliatory.  In addition, Plaintiff does not
address any of Defendants' arguments regarding why her termination was not based on gender.

discrimination, are examined under the familiar burden-shifting analysis first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the burden-shifting method, the plaintiff first has the burden of establishing a *prima facie* case of disparate treatment. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds in showing such a *prima facie* case, a presumption of illegal discrimination is created and a burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged act. *Id.* If the defendant meets its burden by producing a "clear and reasonably specific" explanation for the conduct, *Burdine*, 450 U.S. at 258, the plaintiff may show that the reasons offered by the defendant were merely a "pretext" for discrimination, *McDonnell Douglas*, 411 U.S. at 804. Throughout the process of applying the *McDonnell Douglas* test, courts must remain flexible because the test "was never intended to be rigid, mechanized, or ritualistic." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978).

To prevail on her claim that her work assignments were based on impermissible consideration of her gender, Plaintiff would first need to meet her *prima facie* case requirement by showing that 1) she is a member of the class protected by the statute; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class. *See, e.g.*, *Cole v. Ruidoso Municipal Sch.*, 43 F.3d 1373, 1380 (10th Cir. 1994).

As a woman, Plaintiff meets the first requirement. Plaintiff has not presented any evidence, however, that she suffered any adverse employment action related to work assignments. The Tenth Circuit has explained that the phrase "adverse employment action" is to be liberally

13

defined.  *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998).  When

considering whether an act constitutes an adverse employment action, courts must take "a case-

by-case approach, examining the unique factors relevant to the situation at hand." *Id.*  Adverse

employment actions occur when conduct results in "a significant change in employment status,

such as hiring, firing, failing to promote, reassignment with significantly different responsibilities,

or a decision causing a significant change in benefits."  *Burlington Indust., Inc. v. Ellerth*, 524

U.S. 742, 761 (1998)); *see also Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793,

799 (10th Cir.1993) *overruled in part on other grounds, Buchanan v. Sherrill*, 51 F.3d 227, 229

(10th Cir.1995) (noting that a reassignment may be an adverse employment action when the

employee "receives less pay, has less responsibility, or is required to utilize a lesser degree of skill

than his previous assignment").  Lateral transfers, mere inconveniences, or minor alterations of

responsibilities typically do not constitute adverse employment actions. *Stinnett v. Safeway, Inc.*,

337 F.3d 1213, 1217 (10th Cir. 2003).

　　　Plaintiff has neither alleged nor presented evidence of any substantial adverse actions

related to work assignments.  In fact, the only significant transfer of job responsibilities appears to

have occurred with the "job-swap."  The parties have not described the specifics of the swap, but

it appears that Plaintiff swapped positions with her supervisor and there are indirect suggestions in

the record that her salary may have increased.  It is clear, however, that there is no evidence that

the job swap led to significantly different responsibilities that would meet the requirements for an

adverse employment action.

　　　Accordingly, Plaintiff's claim of disparate treatment on the basis of gender in work

assignments under Title VII and the New Mexico Constitution[7] must fail.

      B.      Hostile Work Environment

Plaintiff further alleges that she was sexually harassed in the workplace. Courts recognize two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment and hostile work environment sexual harassment. *See, e.g.*, *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987). Here, Plaintiff alleges a hostile work environment. To survive a motion for summary judgment on a claim of hostile work environment sexual harassment, a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *See*, *e.g.*, *Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir. 1998).

There is no mathematically precise test for determining whether the conduct challenged by a plaintiff is sufficiently severe or pervasive to create a hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). Instead, the existence of sexual harassment should be determined "in light of the record as a whole and the totality of [the] circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 69 (1986). Some factors to be considered in the analysis

---

       [7] The parties do not address Plaintiff's gender discrimination claims under the New Mexico Constitution. The specific language of the New Mexico Constitution prohibiting sex discrimination does provide a basis for concluding that the standard for interpreting a sex discrimination claim under the New Mexico Constitution is different from the standard for interpreting a sex discrimination claim under the federal constitution. *See, e.g., New Mexico Right to Choose/NARAL v. Johnson*, 126 N.M 788 (1988). However, the Court concludes that the analysis of a sex discrimination claim under the New Mexico Constitution that falls within the heartland of protections provided by Title VII and the New Mexico Human Rights Act is appropriately analyzed under Title VII precedent. *Cf. Garcia-Montoya v. State Treasurer's Office*, 130 N.M. 25, 40 (2001) (using Title VII precedent as guidance when considering employment discrimination claims under the New Mexico Human Rights Act).

include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris* at 23. Because frequency is merely one factor in the analysis, an isolated incident may suffice if the conduct is severe and threatening. *See, e.g., Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1072 (10th Cir. 1998)(allowing claim based on single incident).

The plaintiff must also show that the harassing conduct was "both objectively and subjectively abusive." *Turnbull v. Topeka State Hosp.,* 255 F.3d 1238, 1243 (10th Cir. 2001). However, the plaintiff need demonstrate neither psychological harm nor that plaintiff's work suffered as a result of the harassment. *Penry,* 155 F.3d at 1261. An analysis of whether a hostile work environment exists, or existed, is inherently fact-specific and requires a close examination of all the acts and conduct that the plaintiff alleges contributed to the hostile environment.

Plaintiff asserts that Abeyta made sexually related statements or engaged in sexually related conduct in her presence six times: 1) Abeyta asked Plaintiff what she did that weekend and with whom who she went out; 2) Abeyta discussed his having had sex with two partners at once; 3) on multiple occasions, as they passed a topless bar, Abeyta stated that he and Plaintiff should go to a topless bar; 4) Abeyta asked Plaintiff a second time what she had done the previous weekend and with whom she had gone out; 5) Abeyta showed Plaintiffs pictures of his friends in the nude; and 6) Abeyta asked Plaintiff about her sexual preferences. These incidents occurred over approximately six-months.[8]

---

[8] The Tenth Circuit has cautioned that "[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." *Penry*, 155 F.2d at 1262. The overall scenario here must be informed by the undisputed fact that Abeyta and Plaintiff frequently socialized outside of the work context. They went on

The Tenth Circuit's analysis of the alleged hostile work environment in *Penry* is instructive in analyzing whether the sexually related comments and conduct by Abeyta were "sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive working environment."  *Penry,* 155 F.3d at 1261.  In *Penry*, the court considered the following factual assertions by two women who were harassed by the same supervisor and concluded that no hostile work environment existed:

> Gillum asserts that several times when she and Waggoner traveled together for FHLB business, he intentionally gave hotel clerks the impression that he and Gillum were to share a room, leaving it to Gillum to correct the situation.  While Penry was on business travel with Waggoner in March 1990, he asked her if women have wet dreams.  While Waggoner and Gillum were on a business trip together in April 1990, Waggoner took Gillum to dine at Hooters, a restaurant whose marketing theme is based on its well-endowed female waiting staff.  Gillum was unaware of this feature of the restaurant until after they arrived.  Later, Penry and Gillum learned from another woman in their department that Waggoner had also chosen that restaurant while on business travel with her.  On another trip, Waggoner insisted that Gillum work in his hotel room despite her protests and request to work in her own room.

> During a business trip in October of 1990, Waggoner told Penry that her bra strap was showing but then said, according to Penry, that he kind of liked it that way.   In March of 1991, Gillum overheard Waggoner make a double entendre to another male employee that one of the female assistants "allowed him to get in her drawers anytime."  In November 1992, Waggoner asked Penry what she was wearing under her dress and laughed when she said she did not appreciate the comment.  On separate occasions in 1990 and 1991, Waggoner pointed out to each of the plaintiffs that the roof of a particular mall was shaped like a woman's breasts.  Penry alleges that in the fall of 1992, Waggoner began following her constantly when she got up to go to the breakroom or the bathroom.  Gillum alleges that between spring of 1991 and spring 1992, Waggoner would often (at least twice a week) stand and stare at her while she was working.  In December 1992, Waggoner called one of the other female review assistants over to where he and Penry and Gillum were gathered by demanding, "bring your buns over here."   Gillum alleges that on one day in 1993, Waggoner leaned

---

vacations together, attended events together, went to lunch and dinner together on many occasions, and Abeyta let
Plaintiff use his old apartment free and gave her all the furniture in the apartment

against her and repeatedly tried to look down her blouse. Waggoner repeatedly referred to the collateral assistants as "gals" rather than by name when introducing them to employees at other banks on travel, despite their requests that he stop doing so. Both plaintiffs allege that Waggoner needlessly touched them on many occasions throughout the years they worked with him. Each complains that he would often sneak up from behind and grab her shoulders while loudly saying her name to startle her.

*Penry*, 155 F.3d at 1260-1261; *see also Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365-66 (10th Cir. 1997) (finding no hostile work environment where in a sixteen-month period, there were five sexually offensive statements, including one made while harasser had his arm around the plaintiff and was peering down her dress); *Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167, 170 (10th Cir. 1996) (finding that harassment described by plaintiff was not sufficiently severe or pervasive to create hostile work environment where she showed that her co-worker kissed her on the cheek, inappropriately touched her, and later when she confronted him, lifted her onto a pool table and pinned her back against the pool table).

The conduct described by Plaintiff is not as pervasive or severe as the conduct that was found insufficient to create a hostile working environment in *Penry*. In addition, Plaintiff does not describe any other conduct not directly related to her gender but that was arguably the result of hostility toward her gender. For example, in *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093 (10th Cir. 1999), the Tenth Circuit found that "it is reasonable to infer that [a colleague's sexually harassing conduct] caused other employees who worked with Plaintiff to ignore her, withhold information and passwords from her, refuse to discuss technical matters with her, and generally become uncooperative with her." *Id.* at 1101. Plaintiff also does not describe any unwanted touching which has been a significant factor when courts have concluded that a jury

18

could find a hostile work environment.  *See, e.g.*, *Lockard v. Pizza Hut*, 162 F.3d 1062 (10th Cir. 1998).

The work environment described by Plaintiff cannot be found, under controlling Tenth Circuit precedent, as establishing a hostile work environment.  Accordingly, Plaintiff's hostile work environment claim under Title VII and the New Mexico Constitution must fail.[9]

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, filed January 20, 2004, **[Doc. No. 16]** is hereby **GRANTED**.

Dated this 18th day of August, 2004.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
        Ernest L. Padilla, Esq.

Attorney for Defendant:
        Robert D. Castille, Esq.

---

[9] Having found that Plaintiff has failed to adduce sufficient evidence to support a finding that any federally protected right has been violated, the Court must also grant judgment in favor of Defendants on Plaintiff's claim under 42 U.S.C. § 1985(3).

19